W. J. Howard *v.* The State.

1. Assault with Intent to Murder — Penalty. — Charge of the Court must correctly instruct the jury as to the penalty provided by the Penal Code for the offense charged in the indictment. If the charge errs as to the penalty the conviction will be set aside, even if the error was favorable to the accused, and though no exception was taken to the charge.

2. SAME.— The trial court instructed the jury that the penalty prescribed for assault with intent to murder is confinement in the penitentiary for not less than two nor more than five years. No exception to the charge of the court was taken on account of its misinstruction as to the penalty, and the penalty assessed was a term of two years in the penitentiary,— the minimum allowed by law. *Held*, notwithstanding this matter is first mooted in this court, that the misinstruction is fatal to the conviction, inasmuch as the Penal Code, article 500, prescribes the penalty for the offense at confinement in the penitentiary for not less than two nor more than seven years.

3. "DEADLY WEAPON"— CHARGE OF THE COURT.— Indictment alleged that the assault was made with a "certain knife, the same being a deadly weapon." *Held*, that the charge of the court should have expounded to the jury the meaning of the phrase "deadly weapon" in its application to the case made by the evidence, inasmuch as a knife is not *per se* a deadly weapon.

4. CHARGE OF THE COURT.— It is error to instruct the jury to convict in case they believe certain inculpatory evidence to be true, ignoring other evidence which, if believed by the jury, might exculpate the accused or extenuate his offense.

APPEAL from the District Court of Hill. Tried below before the Hon. J. M. Hall.

The conviction in this case was for an assault with intent to murder one E. M. Jones, in Hill county, Texas, on the 17th day of October, 1884. The punishment assessed by the jury was a term of two years in the penitentiary.

E. M. Jones, the alleged injured party, was the first witness introduced by the State. He testified that he went to the house of the defendant on the morning of the day alleged in the indictment, and found the defendant and one N. T. McAllister loading oats on a wagon. Defendant remarked: "You, or a fellow who answers to your description, have been telling some d—d lies on me, and saying some pretty bad things about me." Witness in reply told defendant that he had said nothing about him that he was not willing to fix up. Defendant then said: "If you said these things about me, you told a d—d lie." Witness denied that he had made the imputed remarks. After some dispute, the defendant said that he was going to cut or stick the witness with a knife he then held in his hand, and as the defendant advanced a step or two, witness stepped forward with his hand on his breast, and replied: "Stick it in." Defendant thereupon cut witness across the breast just below the left nipple. Witness then struck defendant, grappled with him and tried to hold his hands, defendant stabbing him mean time in eight different places. None of these eight cuts were as severe as the first one. He used a spring-back knife with a three or four inch blade, that

resembled a dirk.   Witness bled a great deal, and when the defend-
ant quit cutting him sat up against a wagon and called for water,
which some one gave him.   Witness used no weapons, having none.
He was laid up about two months from the effects of his wounds.

Cross-examined, the witness testified that he did not swear at or
curse the defendant.   If so, he had no recollection of it.   Witness did
not, a day or two before the difficulty, in Johnson county, Texas, tell
one H. S. Cramer that he, witness, was going to whip fifteen cents
an acre out of the defendant.   Witness did not talk about defend-
ant to H. S. Cramer, nor did he threaten to whip or otherwise ill-
use defendant, in Cramer's presence.

N. T. McAllister was the next witness for the State.   He testified
that he was at defendant's house on the morning of the alleged
offense, and saw the difficulty.   After the usual morning salutation,
defendant said to Jones: " I understand you have been telling some
d—d lies on me."   Jones denied it.   Defendant replied:   " If you
said what I have heard you said, you told a d—d lie."   Jones again
denied it, and defendant began to curse Jones, who cursed back.
They cursed and quarreled for some time, the defendant leaning
against a wagon and Jones against his horse, the parties being about
eight feet apart.   During this quarrel each belligerent advanced a
step or two towards the other.   Witness saw no knife in defend-
ant's hand until Jones had advanced two or three steps, his atten-
tion up to that time having been confined to Jones.   Looking at
defendant about this time, witness saw that he had a knife in his
hand, and heard him say that he would cut Jones.   Jones then
stepped forward, protruded his breast, and said, "stick it in."   There-
upon defendant cut Jones across the breast, and Jones knocked the
defendant down with his fist, and caught him as he was falling, and
went down on top of defendant.   Witness left, going to the house,
under the impression that Jones had defendant by the throat.   In
this supposition, however, witness may have been mistaken.   Just
as witness passed into the house he heard the defendant ask
" Hav'n't you got enough?"   Jones replied " Yes," and witness re-
turned to them.   Jones was then sitting down.   Some one told wit-
ness to procure Jones some water, which the witness did.   The
knife used by the defendant was an ordinary pocket weapon, with a
single three or four inch blade.

Cross-examined, the witness stated that Jones was a much larger
and stronger man than the defendant.   Jones inquired of the wit-
ness for the defendant on the morning before the difficulty occurred,
but did not say what he wanted with the defendant.   It was the

impression of the witness that Jones was the first to advance during the difficulty, after which the defendant advanced. The subsequent proceedings were as detailed.

The motion for new trial raised the questions discussed in the opinion.

*B. D. Tarlton*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. This is an appeal from a judgment of conviction in the court below for an assault with intent to murder. Our statute provides that, " if any person shall assault another with intent to murder, he shall be punished by confinement in the penitentiary not less than two nor more than seven years." (Penal Code, art. 500.)

In his charge to the jury in this case the learned judge told the jury that, if they found defendant guilty of an assault with intent to murder, they should " assess his punishment at confinement in the penitentiary at any time not less two years and not more than five years." Inasmuch as the statute expressly requires that the charge " shall distinctly set forth the law applicable to the case " (Code Crim. Proc., art. 677), it has been held time and again that, if the charge is incorrect as to the penalty, though in favor of the prisoner, the conviction cannot stand, whether the charge was excepted to or not. (*Turner* v. *The State*, 17 Texas Ct. App., 587; *Wilson* v. *The State*, 14 Texas Ct. App., 524; Clark's Crim. Law of Texas, p. 517, and note.)

In the indictment it was alleged that the assault was committed with a knife, a deadly weapon. A knife is not *per se* a deadly weapon, and when an indictment specifies a weapon which, according to its use, may or may not be a deadly weapon, the jury should be instructed as to the meaning of the phrase " deadly weapon," in its application to the case made by the evidence. (*Kouns* v. *The State*, 3 Texas Ct. App., 13; *Skidmore* v. *The State*, 43 Texas, 93.) The charge before us fails to so instruct the jury.

Again, the rule is settled that it is error to instruct the jury that they must convict if they find facts are established which are recited in the charge, when other facts in evidence are not referred to in the instructions which, if true, might mitigate the offense or excuse the act charged. (*McFarlin* v. *The State*, 41 Texas, 23.) We are of opinion that the charge trenches upon, if it does not directly impinge this rule by reciting the facts mainly as testified to by the

witness Jones, without reference to material variances from that testimony as stated in evidence by the witness McAllister.

The bills of exception reserved to the overruling of the application for continuance, and to remarks made by the judge in overruling the motion for a new trial, will not be discussed, as those questions cannot arise on another trial.

For errors in the charge of the court as above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered June 3, 1885.]